IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Reach Academy for Boys and Girls, Inc., O.G., :
by her parent and next friend, T.W., by her parent :
and next friend, T. W., by her parent and next :
friend, and S.O., by her parent and next friend, :
:
v. : C.A. No. 13-1974-LPS
:
Delaware Department of Education and Mark :
Murphy in his capacity as Secretary of the :
Delaware Department of Education :

## MEMORANDUM ORDER

This case presents difficult questions arising in what appears to be a unique factual and legal context. The State of Delaware, through its Department of Education and Secretary of Education ("DOE" or "Defendants"), has decided not to renew the charter of Reach Academy for Girls ("Reach"), the only all-girls public charter school in the State of Delaware. In November 2013, DOE concluded that Reach is a "failing" school, based at least in part on standardized test results showing that the performance of Reach students on such tests puts Reach at or near the bottom of all public schools in Delaware. Delaware has one all-boys public charter school, Prestige Academy ("Prestige"), whose charter was renewed for five years in June 2012. Delaware has a statute that precludes DOE from even considering any new application for a single-sex charter school. *See* 14 Del. C. § 506(a)(3)(C) ("The same-gender charter school provisions shall sunset, for any new charter applications, on June 30, 2013, unless the General Assembly has otherwise acted to extend such date prior to its expiration.").[1] Consequently, it is

---

[1] *See also* 14 Del. C. § 506(a)(3)(D) ("Within a reasonable amount of time as determined by the Department of Education, but no longer than 2 years after commencement of operations of any same-gender school in the State, there shall be approved and operating a same-gender charter

1

certain that, if the status quo is preserved, Delaware boys will have a public charter school option that is not available to girls, a distinction based wholly on the sex of the student.

On November 25, 2013, Reach, which is formally known as Reach Academy for Boys and Girls d/b/a Reach Academy for Girls, filed suit in federal court, alleging violations of Equal Protection, Title IX of the Education Act (20 U.S.C. § 1681), Due Process, and two provisions of Delaware's Charter School Act: 14 Del. C. §§ 506 & 514A. (D.I. 1) ("Complaint") The Complaint is also filed on behalf of individual students at Reach and their parents and guardians ("Individual Plaintiffs" and, with Reach, "Plaintiffs"). In their suit, Plaintiffs seek an order that Defendants renew Reach's charter for a full five-year term.

On December 11, 2013, Plaintiffs filed a motion for a preliminary injunction, asking the Court to order Defendants to renew Reach's charter for one additional year. (D.I. 7) On December 16, 2013, Defendants moved to dismiss the entirety of the Complaint. (D.I. 10) The Court expedited consideration of both motions, which the parties fully briefed by December 30, 2013. (D.I. 7, 9, 11, 14, 15, 16, 17) The Court heard extensive oral argument on both motions yesterday, January 2, 2014.

The primary reason for expedited consideration of the pending motions is that Delaware's deadline for filing "choice applications," by which parents and guardians can seek to send a student to a school other than the child's default "feeder pattern" school, is next Wednesday, January 8, 2014. At the conclusion of a teleconference on December 20, 2013, the Court advised

---

school of the opposite gender [of Prestige Academy], matching in grade level and marketed towards similar demographics of the prior-approved, same-gender charter school. The Department of Education shall work with the education community on a plan for recruitment and technical assistance for applicants of a same-gender charter school of the opposite gender.").

the parties that expedited consideration of the motions was warranted. At the hearing yesterday, the Court reiterated its hope to make a decision in advance of the January 8 choice deadline.

Having carefully reviewed the materials submitted, and having considered the parties' arguments at the hearing, the Court has decided to GRANT the preliminary injunction motion and GRANT IN PART and DENY IN PART the motion to dismiss. Given the time constraints already described, the discussion below is limited. A more extensive opinion will follow in due course.

## MOTION TO DISMISS

1. The legal standards applicable to a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) are well-settled. *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

2. The Court agrees with Defendants that Reach lacks standing to press any of the claims in the Complaint. Delaware law provides that charter schools may sue and be sued to the same extent as traditional public school districts. *See* 14 Del. C. § 504(d); *see also* 14 Del. C. § 503 (providing that Delaware charter schools are public schools and their boards of directors are considered a "public body"). Traditional public schools, as creations of the State, *see* 14 Del. C. § 1002(5), may not sue the State. *See Coleman v. Miller*, 307 U.S. 433, 441 (1939) ("Being but creatures of the State, municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator."); *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its

creator."). Accordingly, neither may Reach sue the State. *See also Pocono Mountain Charter School v. Pocono Mountain School District*, 908 F. Supp. 2d 597, 611 (M.D. Pa. 2012) ("Because the relationship between a charter school and a school district is sufficiently analogous to the relationship between a municipality and its creator, the Charter School's § 1983 claims will be dismissed."). While Reach might have standing to press a claim based on the Supremacy Clause of the United States Constitution, *see Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 893 F. Supp. 301, 314 (D. N.J. 1995) ("[M]unicipalities may assert claims against the creating state under the Supremacy Clause, but not under other substantive constitutional guarantees."), the Complaint does not allege such a claim (or even mention the Supremacy Clause).

3. The Individual Plaintiffs have standing to pursue the Equal Protection and Title IX claims ("Discrimination Claims"), as the Individual Plaintiffs allege deprivation of their right to have the same valuable opportunity to attend a state-funded public single-sex charter school that Delaware provides to boys. *See Pocono Mountain*, 908 F. Supp. 2d at 615-16 ("[T]he legally protected interest claimed with respect to the Title VI claim is not Individual Plaintiffs' right to attend the school of their choosing. Rather, Individual Plaintiffs allege an invasion of a legally protected interest to be free from race and national origin discrimination protected by Title VI of the Civil Rights Act of 1964."); *A.N.A. v. Breckinridge County Board of Education*, 833 F. Supp. 2d 673, 678 (W.D. Kt. 2011) ("It is uncontested, of course that barring students from educational opportunities based on their sex without an exceedingly persuasive justification constitutes an invasion of a legally protected interest."). The Individual Plaintiffs have stated Discrimination Claims on which relief may be provided. *See generally United States v. Virginia*,

4

518 U.S. 515, 519 (1996) ("The United States maintains that the Constitution's equal protection guarantee precludes Virginia from reserving exclusively to men the unique educational opportunities VMI [Virginia Military Institute] affords. We agree.").

4. The Individual Plaintiffs lack standing to pursue the Due Process claim and the claims for violation of two Delaware statutes ("Procedural Claims"); the Procedural Claims also fail to state claims on which relief may be granted. The Individual Plaintiffs do not appear to argue that they have such standing. Even if the Individual Plaintiffs had standing, they have not identified a constitutionally-protected property or liberty interest at stake. *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x. 681, 686 n.5 (3d Cir. Aug. 25, 2011) (affirming dismissal of charter school students' Due Process claim, "as the students do not have a cognizable liberty or property interest in going to a school of their choice"); *see also Mullen v. Thompson*, 31 Fed. App'x. 77, 79 (3d Cir. Mar. 25, 2002) ("Plaintiffs have no constitutionally cognizable property or liberty interest in attending the individual school of their choice."). Additionally, while the process Defendants followed in deciding not to renew Reach's charter was far from flawless, and may not have been entirely consistent with State law, the Individual Plaintiffs had adequate notice and opportunity to be heard sufficient to satisfy the constitutional requirements of Due Process. *See Mullen*, 31 Fed. App'x at 79 ("Section 1983 is a critical method for vindicating the denial of federally guaranteed rights but that statute may not be invoked every time local officials allegedly act contrary to state or local procedural law."). Additionally, Defendants' decision that Reach is a "failing" school, while debatable, is rational and defensible, and not arbitrary and capricious. Finally, with respect to the State law claims, Count IV fails to state a claim (for violation of 14 Del. C. § 506) because Reach was only an

"applicant" at the time its initial and renewal applications were pending, so it had no entitlement to "technical assistance" from Defendants at other times, and the provisions on which Count V relies (*see* 14 Del. C. § 514A) were added to Delaware law after the time at which they would have applied to (and benefitted) Reach.

### PRELIMINARY INJUNCTION

5. In the Third Circuit, "cases recognize four factors to be considered in assessing a motion for a preliminary injunction. They are: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir. 1997).

6. The Court disagrees with Defendants' contention that the preliminary relief Plaintiffs seek so alters the status quo that it is a mandatory injunction, and therefore Plaintiffs must meet a higher burden of showing "entitlement to such relief on the merits." (D.I. 14 at 3) The authority cited by Defendants does not persuasively apply to the present circumstances. Such a higher burden might apply if Reach was already closed – and if, therefore, the Court was ordering not only a one-year renewal of the charter but also the re-opening of a closed facility, with all the attendant work that would entail. However, in the circumstances presented here, the Court is only ordering that an open school be permitted to continue to remain open an additional year (subject to reasonable conditions that may be imposed by Defendants).

7. The Individual Plaintiffs have shown a likelihood of success on the merits of their Discrimination Claims. With respect to Count I, alleging a violation of Equal Protection, the

6

Individual Plaintiffs are likely to show that the sunset provision of Section 506, in combination with the non-renewal of Reach's charter, will imminently leave Delaware's girls with no option for a single-sex K-8 public charter school education while, at the same time, Delaware's boys have that very option due to the charter the State has granted to Prestige.[2] The Individual Plaintiffs will likely prove that single-sex education at the K-8 level provides a unique and valuable learning environment for at least some children. (*See* D.I. 16 at 6 ("single gender education is inherently unique"); D.I. 17 at 12 ("Defendants do not dispute that single-gender education has potential benefits and is, in obvious respects, different from coed education. Indeed, that is why the General Assembly authorized for a period of five years the chartering of single-gender charter schools.")) Indefinitely depriving Delaware's girls of access to this unique and valuable educational opportunity, while at the same time providing it to Delaware's boys for at least several more years, is likely to be found to be a violation of the Individual Plaintiffs' right to Equal Protection.[3] *See generally Virginia*, 518 U.S. at 535 ("***Single-sex education affords pedagogical benefits to at least some students***, Virginia emphasizes, and ***that reality is uncontested in this litigation***. Similarly, it is not disputed that diversity among public

---

[2]Plaintiffs claim that the "interplay between the sun-setting provision of 14 Del. C. § 506 and the regulations under Title IX, which encouraged single gender charter schools, and envisioned equal opportunity for both sexes through the opportunity for multiple single gender charter schools, creates a unique situation in Delaware whereby DOE has a heightened burden to ensure that Reach remains open in order to promote gender equality." (D.I. 1 ¶ 7)

[3]The Third Circuit has explained that equal protection is not violated when a state offers optional, single-gender public schools, *so long as* the state makes available to both genders "education equal" options. *See Vorchheimer v. School Dist. of Philadelphia*, 532 F.2d 880, 886 (3d Cir. 1976); *see also Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 720 n.1 (1982) ("Mississippi maintains no other single-sex public university or college. Thus, we are not faced with the question of whether States can provide 'separate but equal' undergraduate institutions for males and females.").

7

educational institutions can serve the public good.") (emphasis added).

8. With respect to Count II, alleging a violation of Title IX, 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."), Plaintiffs need not show any intentional discrimination by Defendants. *See Favia v. Indiana Univ. of Pennsylvania*, 812 F. Supp. 578, 584 (W.D. Pa. 1993), *aff'd*, 7 F.3d 332 (3d Cir. 1993); *Mehus v. Emporia State Univ.*, 295 F. Supp. 2d 1258, 1271 (D. Kan. 2004). As with the Equal Protection claim, the Individual Plaintiffs are likely to show a violation of their rights to equal educational opportunities protected by Title IX.[4] This is the likely result, due to the unique set of circumstances presented here, notwithstanding 34 C.F.R. § 106.23(c)(2), which contemplates (at least in some circumstances) that there need not be parity between the number of all-boys charter schools and the number of all-girls charter schools.[5]

9. The Individual Plaintiffs will be irreparably harmed in the absence of a preliminary injunction because they will lose the opportunity to continue to choose to attend Reach. Without preliminary relief, Reach will not be able to recruit or retain students and

---

[4]Plaintiffs contend that "the interplay between 34 C.F.R. § 106.34(c), and 14 Del. C. § 506 represents an unreasonable, unconstitutional, arbitrary and capricious interpretation of Title IX and thus is not entitled to deference and is without the force of law." (D.I. 1 ¶ 54)

[5]*Compare* 34 C.F.R. § 106.34(c)(1) ("General Standard. Except as provided in paragraph (c)(2) of this section, a recipient that operates a public nonvocational elementary or secondary school that excludes from admission any students, on the basis of sex, must provide students of the excluded sex a substantially equal single-sex school or coeducational school.") *with id.* at (c)(2) ("Exception. A nonvocational public charter school that is a single-school local educational agency under State law may be operated as a single-sex charter school without regard to the requirements of paragraph (c)(1) of this section.").

teachers, thereby losing its funding, thereby leading inexorably to the closure of Reach – even if the Individual Plaintiffs ultimately prevail on the merits in this litigation.[6] The Court recognizes Defendants' concern that the Individual Plaintiffs will be irreparably harmed by continuing to attend Reach, due to its failing academic status. (D.I. 14 at 23) Importantly, however, because Reach is a charter school, *no student* is being compelled to attend Reach. All of Reach's students have chosen to go to school at Reach, notwithstanding the very public facts of the student body's standardized test scores and DOE's labeling of Reach as a "failing" school.

10. The harm to the Individual Plaintiffs if a preliminary injunction is not granted outweighs any harm that will occur to Defendants as a result of the preliminary injunction being granted. The main harm identified by Defendants is the "undermin[ing]" of their ability to hold charter schools accountable and to enforce rigorous academic standards. (*Id.* at 25) This is a substantial harm, but the weight it deserves in the instant analysis is reduced because Defendants will be permitted to impose any reasonable conditions on Reach's one-year charter renewal that Defendants believe are warranted, and Defendants retain their right to initiate revocation proceedings against Reach, should such an action be warranted. *See* 14 Del. C. § 515. More importantly, any negative impact on DOE's oversight of public schools (while regrettable) is limited to the unique and unusual circumstances presented in this case, which – given the sunset provision of Section 506 – are not replicable.

11. The public interest favors enforcement of the Individual Plaintiffs' constitutional rights. *See Council of Alternative Political Parties*, 121 F.3d at 883-84 ("In the absence of

---

[6]It is undisputed that Reach will be irreparably harmed by a failure to grant the preliminary injunction. The harm to Reach will indirectly harm the Individual Plaintiffs, because it will result in the Individual Plaintiffs losing the option to attend Reach.

9

legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights . . . ."). However, the Court also agrees with Defendants that "it is in the public interest that DOE not consent to allow a failing charter school to continue receiving the benefits afforded to charter schools when that school has repeatedly failed to meet its academic requirements and is moving in the wrong direction." (D.I. 14 at 24; *see also* 14 Del. C. § 501 (providing that charter schools must meet measurable standards of student performance)) The complication here is that closing Reach is likely, under present circumstances, to be proven to be a violation of Equal Protection and Title IX. Should such violations ultimately be proven on the merits, the Court anticipates that determining appropriate permanent relief will be even more complicated.[7] Nevertheless, on the present record, and mindful of the choice application deadline of January 8, the Court finds that, on balance, the public interest favors the Individual Plaintiffs.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (D.I. 10) is GRANTED to the extent that (a) all claims brought by Reach are DISMISSED, and (b) Counts III, IV, and V brought by the Individual Plaintiffs are DISMISSED; and DENIED to the extent that Counts I and II brought by the Individual Plaintiffs will PROCEED.

2. Plaintiffs' motion for preliminary injunction (D.I. 7) is GRANTED. Defendants shall renew Reach's charter for one (1) additional year. Such renewal may be subject to any

---

[7] It may well be that appropriate permanent relief will not include ordering that Reach be granted any further renewal of its charter.

reasonable conditions required by Defendants and is without prejudice to whatever rights and obligations Defendants otherwise have under Delaware law, including the right to, if warranted, pursue revocation proceedings against Reach.[8]

3.  The parties shall meet and confer and shall, **no later than January 10, 2014,** submit a proposed scheduling order to culminate in a trial to be held no later than July 31, 2014.

Dated: January 3, 2014
Wilmington, Delaware

_____
UNITED STATES DISTRICT JUDGE

---

[8]The Court senses that some other form of relief may be more appropriate given that the nature of the likely constitutional violation is the imminent lack of any single-sex public school option for girls at a time when Delaware provides such an option to boys, yet the option available to girls is one that the State has determined is a failing school. However, given that the parties have presented the issue for the Court as a choice between Plaintiffs' proposed relief or no relief, and given that barely days remain before the crucial date of the choice deadline, the Court feels constrained to choose between the only options presented to it. As the Court has found the Individual Plaintiffs have satisfied each of the factors required for preliminary injunctive relief, providing them no such relief would be inappropriate.